ANDREWS *v.* STATE.

No. 41364          January 4, 1960          116 So. 2d 749

A. S. Scott, Jr., *Lampkin Butts,* Laurel, for appellant.

*G. Garland Lyell, J.,* Asst. Atty. Gen., Jackson, for appellee.

ARRINGTON, J.

The appellant, W. V. Andrews, was convicted in the Circuit Court of the Second Judicial District of Jones County of the crime of manslaughter and sentenced to the penitentiary for a term of twelve years, from which judgment he appeals.

The indictment charges that the appellant did unlawfully and feloniously and of his culpable negligence, and without authority of law, kill and slay one Teresa Kay Walker.

On September 6, 1958, the appellant married Mary Walker. Both had been previously married and divorced. The appellant had three children, a girl 8 years of age, and two boys, ages 5 and 4 respectively, by his former marriage, and Mary Walker had one child, Teresa Kay, the deceased, who was ten months old at the time.

At the time of the marriage, the deceased child was kept by her uncle and aunt, a Mr. and Mrs. Braswell, for a few days. Later, they kept her from November 18 to December 24, 1958, when she was returned to appellant's home where she lived until her death on January 27, 1959. At the time deceased was returned, she was in good health with the exception of a slight cold. In the early part of January she became ill and was carried to Dr. Ellis in Laurel on January 19, who found her suffering from a vitamin deficiency and malnutrition. During the time the deceased was living in the appellant's home, she was subject to constant mistreatment by the appellant. A large number of witnesses testified to whippings given the deceased child by the appellant. There was also evidence that the appellant did not like the child and when told that she was too young to be whipped, appellant said she was spoiled and had to be taught manners. All the foregoing evidence tends to show the ill-will of appellant towards the deceased infant.

On January 27, in response to an anonymous telephone call, a welfare worker called at appellant's home

to take the deceased child to a physician. Appellant came to his home while the welfare worker was there after receiving a telephone call from his wife. Appellant was angry at the welfare worker and told her, "I wish the God-damn neighbors and welfare department would keep their nose out of my business."

On the same day the appellant, according to his testimony, returned to his home from his work about 6 to 6:15 P. M. He further testified that the baby had just finished her supper and she was carried upstairs and put to bed; that the baby fell off the bed three times, each time being put back in the bed by the appellant; that the last time he brought her downstairs and held her until she went to sleep, and he and his wife carried her upstairs and put her to bed. His wife then left to make a purchase at a nearby store, and during her short absence, he heard a "brawling noise" from the child's room; that he rushed up the stairs and found the child struggling—"sounded like it was having a convulsion;" that he grabbed the child and gave artificial respiration; that his wife was then coming in and they rushed the child to the hospital, where oxygen and artificial respiration were administered, however, upon Dr. Ellis' arrival, the baby was dead. The time was estimated to be from 7 to 7:30 P. M.

Dr. Ellis would not sign the death certificate stating that he did not know the cause of death, and he suggested an autopsy. The appellant objected to an autopsy. The doctor testified that he would not sign the death certificate until he got an autopsy; that he then told the mother, appellant's wife, that he was sorry the baby had died and he was sure she wanted to know what caused the baby's death. She agreed to the autopsy and then she and the appellant signed the necessary papers. Dr. Puckett, a pathologist, performed the autopsy, and according to his testimony and that of Dr. Ellis, the cause of death was given as shock and hemorrhage due

to a ruptured liver. Dr. Puckett testified that he found a one-inch tear on the lower portion of the liver and a two and one-half inch tear in the central portion of the dome of the liver; that the deceased received a severe blow which could be caused by a compression injury, and that the injury could have been as late as thirty minutes to one hour, or could have been as long as ten to twelve hours prior to her death. In addition to these injuries, he also found that she had a bruise beneath the ridge of the left eye and a two inch bruise over the vertebrae column in the center of the back, also that she had three fractured ribs. He testified that none of these injuries were related to her death in that they had taken place prior to the injury to her liver. Both of the doctors testified that a fall from a bed or the giving of artificial respiration was not sufficient force to cause the rupture of the liver, and that the deceased did not die a natural death.

A number of witnesses testified that they were in the appellant's home on January 27 and that the child was better that day. The welfare worker testified that the baby had eaten her lunch about 11 o'clock that day. Another witness testified that she was in the home several times and that at about four o'clock in the afternoon the deceased was sitting in her mother's lap eating a cracker, smiling, and seemed much better. Mrs. Braswell, the child's aunt, was in the home about 4:30 P. M. and she testified that the child was better and wanted to go home with her. Another witness who moved into the apartment next door to the appellant on January 27, testified that she heard distressed crying in the appellant's apartment from 5:30 to 6 P. M. and estimated the time to be for about two hours; that she did not know the appellant but a black and white car was parked at his apartment at that time. Another witness who lived in the next apartment to the appellant testified to prior whippings of the deceased by the appellant, and

that on January 27 she heard the baby crying between 5:30 and 6:30 P. M.; that the baby cried a good while but she did not know who was at home at that time; that the car the appellant drives was parked between his and her apartment at that time; that the appellant usually got home between 5:30 and 6 o'clock P. M.

The appellant testified that he arrived home at six or 6:15 P. M. on the date in question, and that his wife was bringing deceased out of the kitchen at that time, stating that she had had her supper. Several witnesses testified that the appellant made the statement at the funeral home that he possibly whipped the baby too hard or that he hurt her in giving her artificial respiration. The appellant denied the statement that "he probably whipped the baby too hard," but admitted he gave her artificial respiration. He also admitted that he spanked the baby three or four or five times, but denied hitting her or using any force or giving her any blow whatsoever on that date.

■■■ The appellant assigns a number of errors; first, that the court erred in overruling his motion for a bill of particulars as to the crime charged in the indictment. This was not error. This Court has held that the indictment is the only bill of particulars required by law. Sanders v. State, 141 Miss. 289, 105 So. 523.

■■■ Appellant argues that the court erred in overruling the motion to exclude the evidence and direct a verdict for the appellant when the State rested. This was not error as the appellant introduced evidence which waived the error, if any. Kellum v. State, 213 Miss. 579, 57 So. 2d 316.

■■■ It is next argued that the court erred in refusing the requested peremptory instruction at the conclusion of all the evidence. We are of the opinion that upon the evidence set out above this was a case for the determination of the jury. The appellant argues that the verdict of the jury was contrary to the overwhelm-

ing weight of the evidence. We have carefully studied the record in this case as this conviction depends upon circumstantial evidence. Analyzing the facts above set out, we are of the opinion that the evidence shows that the deceased was smiling and eating crackers as late as 4:30 on the afternoon of January 27, after having had lunch at approximately 11 A. M., and later that evening, according to appellant's own testimony, she had her supper at 6 or 6:15 P. M. It is unreasonable to conclude that the deceased was injured to the extent that she was suffering with two ruptures in her liver at this time. This fact, taken in connection with the distressed crying of the deceased at about this time and other facts as testified to by witnesses, all of which was denied by the appellant, were all circumstances for the consideration of the jury. In addition thereto, the testimony of the two expert doctors who testified that it would take a severe blow or force to cause the injuries the deceased received. We think the evidence was ample to support the verdict of the jury. We have held that circumstantial evidence does not have to exclude every possible doubt, but only every reasonable doubt, or reasonable hypothesis. Sauer v. State, 166 Miss. 507, 144 So. 225.

The appellant also argues that the court erred in refusing his requested instruction on the presumption of innocence. This instruction, or a similar one, was condemned by this Court in the case of Carr, et al. v. State, 192 Miss. 152, 4 So. 2d 887. This ruling has been consistently followed since that time.

The appellant next argues that the court erred in overruling the appellant's objection to argument of the district attorney as set out in a special bill of exceptions, ". . . and when defendant burst the liver of this little girl. . . ." We have carefully considered this assignment and are of the opinion that the court was correct in overruling this objection. All the circum-

stances in this case pointed to the appellant, and it is not disputed that the two ruptures in the deceased's liver was the cause of death. ██ ██ We have held that it is the right and duty of attorneys to deduce and argue reasonable conclusions based upon the evidence, which are favorable to their clients, and they may do so whether the conclusions so urged are weak or strong so long as legitimate and at least it is the function of the jury to determine the logic and weight of the conclusions. Ivey v. State, 206 Miss. 734, 40 So. 2d 609.

██ ██ The appellant last argues that the court erred in permitting inflammatory and prejudicial evidence to be introduced over the objection of the appellant. The appellant says that he was indicted under Section 2232, Code of 1942, which provides that every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, shall be manslaughter, and argues that the court erred in effect of permitting evidence of murder to be admitted. In other words, the appellant argues that evidence which establishes murder should not be introduced upon an indictment charging manslaughter. Assuming for the sake of argument that evidence of murder was admitted, this certainly could not be a defense to manslaughter for every indictment charging murder or manslaughter there must be a felonious homicide. In the case of Price v. State, 152 Miss. 625, 120 So. 751, the Court said:

"We will say, however, that no distinction appears to us to be found between the contention here that on an indictment for manslaughter evidence that would make a case of murder should not be admitted, and the cases in which it has been decided that a conviction of manslaughter on an indictment for murder, where the evidence makes a case of murder, is harmless error as to the defendant, being beneficial rather than detrimental to him. In the case before us the indictment was for manslaughter. The state, by its proper authorities, had

elected to charge the crime committed, on the facts produced, to be manslaughter instead of murder. That election, of course, is binding upon the state, and no subsequent indictment involving the same facts for murder could be found. On a manslaughter indictment the question is whether the killing was unlawful or lawful. Anything that tends to show that it was unlawful, when competent and relevant, is admissible in evidence in such case, and that the fact that the evidence, or some of it, might make out a case of murder or tend to do so, does not prevent it being received on a charge of manslaughter when the state has elected to prosecute for manslaughter only.''

Affirmed.

*Roberds, P. J.,* and *Lee, Kyle* and *Gillespie, JJ.,* concur.