293 So.2d 425 (1974)
Robert BROWN
v.
STATE of Mississippi.
No. 47679.
Supreme Court of Mississippi.
March 18, 1974.
Rehearing Denied May 13, 1974.
Roy Noble Lee, Forest, for appellant.
A.F. Summer, Atty. Gen., by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
*426 INZER, Justice:
Appellant Robert Brown was indicted in the Circuit Court of Scott County for the crime of murder in the killing of Bobbie Nell Sistrunk. He was tried and convicted of manslaughter and was sentenced to serve a term of twenty years in the State Penitentiary. From this conviction and sentence he appeals. We affirm.
On November 6, 1971, at about 1 p.m., the body of Bobbie Nell Sistrunk was found on the front seat of her 1968 Mercury automobile by Reverend O.B. Nelson. The car was parked on a log road leading from the public road to Boozer's Washhole in Scott County. This road was used by fishermen and had a reputation of being a "lover's lane." Reverend Nelson sent word of the discovery of the body to the sheriff's office and remained at the scene until Deputy Sheriff Clyde Lindsey arrived about 2:30 p.m. Dr. Howard Clark came to the scene shortly thereafter and examined the body.
The body was lying on the front seat of the automobile with her head on the seat pointing toward the driver's side and her feet were on the floorboard against the right door. Mrs. Sistrunk's clothes were not rumpled or torn and there were no scratches or bruises on her body. Dr. Clark examined the body and found that she had been dead for some time from the bullet wound. The bullet entered under the chin and came out on the top of her head. The size of the wound indicated that it had been made by either a .32 or .38 caliber bullet and there were powder burns around the wound on her neck. It was the doctor's opinion that the muzzle of the weapon which fired the bullet was from 6 to 18 inches from the point of entry.
There was a large quantity of blood on the right door post and blood had run down the door post and pooled on the right rear floor mat. There was a smear of blood on about the middle of the front seat, on the left inside door handle, on the ignition key, and on the right hand side door handle which appeared to have been smeared by someone attempting to wipe it off. There was also a smear of blood on the trunk of the car.
No weapon was found in the car, but a flattened spent bullet was found on the right rear floor mat. Fragments of bone and human hair were on it. The bullet was flattened on one side, indicating that it had struck a metal object.
Appellant Robert Brown was a married man with a family, but he had been going with Mrs. Sistrunk for about three years. On Friday morning the day before the body was found, appellant and a fellow worker, Larry Van Story, started drinking beer after they got off from work. Appellant was driving a pick up truck belonging to his employer. About noon they went to Dino's Cafe in Morton where they saw Bobbie Nell. Appellant, Van Story and one Chisolm had planned to go to Cole's Bluff on the river to have a chicken cookout and had arranged with Bobbie Nell to come and join them late that afternoon. She was to bring with her two other women. Appellant and Van Story then picked up a case of beer and iced it down in a milk can. They proceeded to the river and cooked the chicken.
Van Story testified that Bobbie Nell came in her car to the place where they were but did not bring anyone with her. She was drinking a can of beer when she arrived. After she had eaten a piece of chicken, she picked up appellant's .32 caliber pistol that appellant had removed from the pocket of the pick up truck. She fired it once into the air. A short time later they loaded up the equipment to return to Morton. The milk can with the beer in it was put in the trunk of Bobbie Nell's car. Van Story did not know what happened to the pistol but it was not put back in the pick up. About dark they left to return to Dino's Cafe where there was to be a dance that night. Van Story and Chisolm returned in the truck and appellant rode with Bobbie Nell. Van Story returned the *427 truck to their employer's shop and met the others at Dino's about eight o'clock. They sat there drinking beer until about nine o'clock. The band that was supposed to furnish the music did not appear and appellant and Bobbie Nell left. Van Story did not see appellant anymore that night. About ten o'clock the next morning appellant came to his room and awakened him. Appellant asked him to go to Forest with him to get some beer. On the way back to Morton they made a loop around by Coopersville, where Bobbie Nell's mother lived. Appellant told Van Story he wanted to see if he could find his pistol and beer that he had left in Bobbie Nell's car. Not seeing the car they returned to Morton, and Van Story left appellant about noon and did not see him anymore that day.
After an investigation by the sheriff's department, appellant was arrested on the following day and charged with the murder of Bobbie Nell. Appellant made a statement to the officers, but the trial court ruled that this statement was involuntary and excluded it. Appellant did not testify at the trial.
Mrs. Lena Mae Gainey, mother of the deceased, testified over the objection of the appellant, that on Monday, November 8, 1971, after her daughter's funeral, she went by the Scott County Jail to talk with the appellant. Her purpose was to find out why he had killed her daughter. The sheriff brought appellant from his cell to the room where Mrs. Gainey was and she talked with him for a few minutes. During the course of the conversations she asked appellant why he killed her daughter. Appellant said, "Mrs. Gainey, you won't believe it, it was an accident." Mrs. Gainey told him that she did not believe it was an accident. She also was allowed to testify over the objection of appellant that two or three weeks before her daughter's death, appellant called her home and wanted her to give Bobbie Nell a message and when she refused to do so, appellant cursed her and said he was paying for the telephone bill.
The only testimony offered by appellant was that of five character witnesses who testified that appellant's general reputation for peace or violence was good in the community in which he lived.
Appellant assigns as error the refusal of the trial court to grant a directed verdict of not guilty at the conclusion of the state's evidence and the refusal of the court to grant his request for a peremptory instruction at the conclusion of all the evidence. Appellant first urges that the evidence does not sustain the corpus delicti. We find no merit in this contention. The corpus delicti in a homicide case is made up of two fundamental facts. The first being the death of the deceased and the second the fact of the existence of a criminal agency as being the cause of the death. There can be no question relative to the death of the deceased. The second element may be proven by circumstantial evidence and the reasonable inferences that may be drawn from such evidence. The deceased was found dead in her automobile from a bullet wound fired at close range. No weapon was found in the car. There was no blood on the ground. There was blood in the car and blood smeared on the outside left door handle and on the trunk of the car. It appeared that someone had attempted to wipe the blood off the door handle. We are of the opinion that the evidence was sufficient for the jury to find beyond a reasonable doubt that Mrs. Sistrunk met her death as a result of a criminal agency. See Elliott v. State, 183 So.2d 805 (Miss. 1966), and the cases cited therein.
The next question and the most important question is whether the evidence on behalf of the state was sufficient to withstand appellant's motion for a directed verdict and a peremptory instruction. A decision on this point hinges on the question of whether the testimony of Mrs. Gainey relative to the conversation she had with the appellant at the jail was admissible in evidence. Appellant urges that the conversation *428 of appellant with Mrs. Gainey was tantamount to custodial interrogation and that the requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1964); were not met. We find no merit in this contention. The trial court conducted a preliminary inquiry out of the presence of the jury and the proof established that the statements made by appellant to Mrs. Gainey were free and voluntary. It was also established that the conversation was not instigated by anyone connected with any law enforcement agency. Mrs. Gainey wanted to find out why appellant had killed her daughter. Although appellant was in jail at the time this confrontation occurred, it did not amount to custodial interrogation within the meaning of the rule announced in Miranda v. Arizona, supra; Glass v. State, 278 So.2d 384 (Miss. 1973); and McElroy v. State, 204 So.2d 463 (Miss. 1967). The trial court correctly held that this testimony was admissible.
The jury had a right to consider this testimony and draw such reasonable inferences therefrom as it justified. They also had the right to take into consideration the circumstances under which it was made. Appellant was in jail charged with the killing of Mrs. Gainey's daughter. She wanted to know why he killed her daughter. When she asked appellant why he killed her, certainly appellant was under no obligation to tell Mrs. Gainey anything, but he chose to speak. If he had not killed her, all he had to say was that he did not do so, instead he said, "You won't believe it, it was an accident." Mrs. Gainey took this as an admission by appellant that he did kill her daughter. She told him that she did not believe it was an accident. She then told him to pray for forgiveness. Appellant made no further explanation. Under these circumstances, the jury could reasonably infer that it amounted to an admission that he did in fact kill her. This admission together with other testimony that established: (1) appellant was the last person seen with the deceased prior to her death; (2) his .32 caliber pistol was in her car when they left Dino's Cafe about 9 P.M.; (3) it was not in the car on the following day when the body was found; and (4) his cooler containing beer was found in the trunk of her car was sufficient to make a jury issue. Therefore, we are of the opinion that the trial court was correct in overruling appellant's motion for a directed verdict and his request for a peremptory instruction.
Appellant has urged that the case against him is not sufficient to prove his guilt beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis consistent with his innocence. In the absence of appellant's statement to Mrs. Gainey, this would be true. As heretofore stated, the jury had the right to draw the inference from this statement that it was an admission on the part of the appellant that he had killed Bobbie Nell Sistrunk. This being true, this admission along with the circumstantial evidence was sufficient for the jury to determine beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis that the appellant was guilty of manslaughter. Andrews v. State, 237 Miss. 875, 116 So.2d 749 (1960); Kirk v. State, 222 Miss. 187, 75 So.2d 641 (1954); and Sauer v. State, 166 Miss. 507, 144 So. 225 (1932).
The only other assignment of error that is necessary to notice is that the trial court was in error in overruling appellant's objection to the testimony of Mrs. Gainey relative to a telephone conversation she had with appellant about two weeks before the death of her daughter. Mrs. Gainey testified that appellant had been dating her daughter for about three years and that he came to see her about two or three times a week. The district attorney then asked her if she had had a telephone conversation with the appellant a few days before her daughter's death. She replied that she had and that appellant wanted her to give a message to her daughter. She testified that she told him that she did not want *429 him calling the house, whereupon he cursed her. When asked by the district attorney what he told her, appellant objected on the ground that the telephone conversation had no relevancy to the issue involved. The court overruled the objection and Mrs. Gainey stated that he cursed me and said that he was paying for the telephone call. Mrs. Gainey then testified relative to the conversation with appellant at the jail. Appellant urges that the admission of Mrs. Gainey's statement that appellant cursed her and talked ugly to her was so prejudicial as to require reversal of this case. It is argued that the only purpose of this testimony was to prejudice the jury against the appellant. On the other hand, the state argues that the testimony of Mrs. Gainey to the effect that appellant had been going with her daughter some three years was certainly relevant and that the answer of Mrs. Gainey to the question by the district attorney was not responsive to the question asked, therefore the testimony was not elicited for the purpose of prejudicing the jury. The state also contends that if the response of the witness had no probative value, and was error, such error was not so prejudicial so as to require reversal of this case. We note from the record that Mrs. Gainey had already testified that appellant had cursed her before any objection was interposed. It was only after the district attorney had asked her what appellant told her did the appellant object to the testimony along this line. We are of the opinion that the trial court should have sustained this objection when made, however, Mrs. Gainey in answer to the questions stated that he cursed me and said he was paying for the telephone call and talked ugly. In actuality, her testimony after objection was practically the same as she had already testified to without objection. After careful consideration we are of the opinion that under all the facts and circumstances of this case, the error of the trial court in failing to sustain the objection when made, did not constitute reversible error. Ferrill v. State, 267 So.2d 813 (Miss. 1972); Miss. Supreme Court Rules 11 (1967).
In summary, we are of the opinion that the evidence on behalf of the state was sufficient to make a jury issue and that its verdict is not against the overwhelming weight of the evidence, especially is this true in the absence of any evidence on the part of the appellant to account for his whereabouts or actions from the time he left Dino's Cafe with the deceased until the next morning.
There being no reversible error in this record, this case must be and is affirmed.
Affirmed.
GILLESPIE, C.J., and ROBERTSON, WALKER and BROOM, JJ., concur.