# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-KA-00792-SCT

*ROBERT STEWART*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 7/9/93 |
| TRIAL JUDGE: | HON. ISADORE W. PATRICK, JR. |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | C. ASHLEY ATKINSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT FLYNN |
| DISTRICT ATTORNEY | |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 2/13/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DAN LEE, C.J., PITTMAN AND MILLS, JJ.**

**PITTMAN, JUSTICE, FOR THE COURT:**

Robert Stewart was indicted for sexual offenses allegedly committed with his step-daughter. Because of a possible conflict of interest, Circuit Judge Keith Starrett recused himself. The Fourteenth Circuit Court District is a single judge district. This Court appointed Judge Isadore Patrick as a special judge.

Stewart was convicted in the Circuit Court of Pike County, Mississippi, on two counts of sexual battery and one count of fornication between persons forbidden to marry. He was sentenced to serve a term of ten years on each of the sexual battery charges, to run consecutively, and five years on the fornication conviction, to run concurrently with counts one and two, and to pay all court costs.

Aggrieved, he appeals to this Court arguing that Miss. Code Ann. §§ 9-1-105 and 9-1-107 (1972) of

the Code are both unconstitutional, because under Section 165 of the Constitution only the Governor has authority to appoint special judges. He argues that the appointment of Circuit Judge Isadore Patrick, by this Court pursuant to § 9-1-107 was improper and that Judge Patrick was without authority to act.

Stewart also alleges violation of the due process clause of the Fourteenth Amendment, failure to give *Miranda* warnings before blood samples were taken from him, and that the State's admission of the test results by DNA expert, Dr. Robert Giles', was reversible error.

## I.

LaKimberly Gallagher, stepdaughter of Robert Stewart, and a student at Jackson State University, testified that Stewart had been having sexual intercourse with her since she was thirteen years old. She stated that she did not tell anyone at first because her real father had put her mother, her little sister and her out of their home when she was a very small child, thus, she was afraid of this happening once again.

She became pregnant in January 1993, and told her mother about Stewart's sexual intercourse with her. She testified that the last occurrence was on November 17, 1992, while her mother was at the hospital with her grandmother. She also stated that previous to then, Stewart had intercourse with her on September 19, 1992. Both occurrences were against her will.

DNA samples of blood were tested at GeneScreen Laboratories. Samples were also tested by Life Codes. GeneScreen technicians, Susan Smallwood and Dr. Robert Giles testified that the probability that Stewart was the father of the aborted fetus was more than 99.99 percent.

David Caulfield, a social worker, testified that Stewart admitted to him that he had sex with Kim on more than one occasion, but that Stewart claimed she was a willing participant. The State's other witnesses were: Nelda Reames, who took Stewart's blood sample; Dr. Barbie Sullivan, who took blood samples from both Kim Gallagher and the aborted fetus; Deputy Sheriff Jane Causey, who sent the blood samples to GeneScreen, and Carolyn Stewart, the defendant's wife and Kim's mother.

The defense consisted of the testimony of Dr. Carlton Faller, who testified that Stewart had a low sperm count. However, he admitted on cross-examination that such fact had little to do with a female becoming pregnant.

Dr. Melissa Fowler, of the Rape Crisis Center, stated that Kim first told her that her boyfriend was the baby's father. She admitted however, that Kim had called her at home that very night and stated that in fact, the baby's father was Stewart. Dr. Price, a physician, testified that Kim told him that Stewart was the baby's father and that she had never had intercourse with anyone else. Willie Jones testified as a character witness for Kim. Andre Nathaniel and Kenneth Coleman, two of Kim's boyfriends, each testified that he had not had intercourse with Kim at anytime during the relevant period. James Smith, Kim's uncle, who had been expected to testify that he had spent the night of November 17, 1992, at Stewart's home, instead testified, that he did not arrive there until November 19 or 20.

Stewart then took the stand in his own defense and denied ever having sexual intercourse with Kim.

He also denied telling David Caulfield that he had sex with his stepdaughter. The jury was not convinced and found Stewart guilty as charged. This appeal followed.

## II.

Stewart claims that Miss. Code Ann. (1972) § 9-1-105[(1)] is unconstitutional as it is in derogation of Section 165, Constitution of 1890. He maintains that under this section only the Governor may appoint a special judge to serve upon the disqualification of the regular judge of that district.

Section 165 of the Constitution provides as follows:

> No judge of any court shall preside on the trial of any cause, where the parties or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, except by the consent of the judge and of the parties. Whenever any judge of the Supreme Court or the judge or chancellor of any district in this state shall, for any reason, be unable or disqualified to preside at any term of court, or in any case where the attorneys engaged therein shall not agree upon a member of the bar to preside in his place, the governor may commission another, or others, of law knowledge, to preside at such term or during such disability or disqualification in the place of the judge or judges so disqualified.

Stewart claims that this Court persuaded the Legislature to enact those sections without the Governor's approval in Chapter 587 Laws 1989. Stewart now claims that § 9-1-105 has completely abolished the authority of the Governor to appoint any special judge. He claims that such action by the Supreme Court is exercising a power properly belonging only to the executive branch of government under Section 165 of the Constitution. Stewart fails to cite any case authority. "[W]hen a litigant fails to cite authority for his claim of error, we will not address them." *Gerrard v. State*, 619 So. 2d 212, 216 (Miss. 1993) (*citing Wright v. State*, 540 So. 2d 1, 4 (Miss. 1989) (claims with no citation to authority are not properly before the Court)). Thus, this assignment of error is precluded from review by this Court.

Moreover, this Court has looked at this issue on several occasions and consistently ruled that a party to a legal action does not have standing to challenge the appointment of a special judge. *See Nelson v. State*, 626 So. 2d 121 (Miss. 1993); *Anderson v. Anderson*, 190 Miss. 508, 512, 200 So. 726 (1941); and *Winn v. Eatherly*, 187 Miss. 159, 192 So. 431 (1939). As in *Nelson*, citing this Court's long precedent, Stewart's claim of alleged unconstitutionality of these statutes must fail.

Next, Stewart claims Judge Patrick's refusal to recuse himself because he was appointed under § 9-1-107, was error. Miss. Code Ann. § 9-1-107 sets forth the criteria for appointment of a retired chancery, circuit or county court judge or a retired Supreme Court Justice as special judge.

Stewart fails to show, nor does he even attempt to show that Judge Patrick's appointment unduly prejudiced his case. He fails to show any conflict of interest or that Judge Patrick was otherwise unqualified to preside over this case. As an elected circuit court judge of this state, he was subject to appointment by the Chief Justice under § 9-1-105. A clerical error in the order regarding the statute is of no consequence. The same authorities which prohibit Stewart from prevailing on the constitutionality question, also prohibit a reversal on this assertion. Judge Patrick was appointed under the wrong statute. The State concedes this as well. He should have been appointed under § 9-

1-105, which was cited in the order. However, once appointed, he was a de facto judge, whose orders are not subject to collateral challenge. *Nelson, supra.* There is no merit to these claims.

### III.

Stewart next argues that social worker David Caulfield was required to give him *Miranda* warnings prior to Stewart's statement to Caulfield. In the case at bar, Caulfield was merely interviewing Stewart, prior to any arrest or determination of any probable cause for committing any child abuse. Caulfield was not a police officer, as he told Stewart, and had no arrest powers. A confession under these circumstances, to a private person, does not require *Miranda* warnings. *See, e.g., Brown v. State*, 293 So. 2d 425 (Miss. 1974); and *McElroy v. State*, 204 So. 2d 463 (Miss. 1967). Caulfield testified during the suppression hearing that he explained to Stewart, "that I wanted him to realize that I knew I was a guest in his house, and at any time he wanted me to leave, that he could just ask for me to leave." He stated that Stewart even asked, "what would happen if he did make a statement," and Caulfield explained to Stewart that the laws mandate Caulfield to report back to the district attorney and the youth court. After being told all that, Stewart admitted that he had sexual relations with Kim more than once. This issue is without merit.

### IV.

Stewart argues that the results of his blood tests should have been suppressed as being "fruit of the poisonous tree." He cites the 14th Amendment and Section 23 of the Mississippi Constitution as authority. He claims that his blood was withdrawn pursuant to a search warrant based solely on the illegally obtained statements Stewart made to Caulfield.

However, the trial court was correct in admitting Stewart's statement made to Caulfield. Therefore, there is no "fruit of the poisonous tree doctrine" to apply in the case at bar.

Stewart also claims that there was insufficient probable cause without the statement that Stewart made to Caulfield. However, Deputy Sheriff Jayne Causey testified during the suppression hearing that, prior to requesting the search warrant, Kim had told her that Stewart had sexually assaulted her. This Court has held that when a rape victim names the defendant as her assailant, probable cause for a search warrant exists. *Daniel v. State*, 536 So. 2d 1319 (Miss. 1988); *Jones v. State*, 504 So. 2d 1196 (Miss. 1987). This Court finds that because there was a valid search warrant based on Kim's telling Deputy Causey that Stewart was her assailant, there was no error in admitting the blood test.

### V.

Stewart claims that the trial court erred in allowing the testimony of Dr. Robert Giles, DNA expert, thus the admission of the test results was error. Stewart correctly cites this Court's stringent requirements of the admission of DNA test results as stated in *Polk v. State*, 612 So. 2d 381, 388 (Miss. 1992). Stewart claims that the trial court failed to apply the three-prong test set by this Court in *Polk*. In *Polk*, this Court abandoned the *Frye* test, *Frye v. U.S.*, 293 F. 1013, 1014 (D.C. Cir. 1923), which set the standard that for an expert opinion to be admissible "the thing from which the deduction is made be sufficiently established to have gained general acceptance in the particular field in which it belongs," in favor of a test set by the Alabama Supreme Court in *Ex parte Perry v. State,*

586 So. 2d 242 (Ala. 1991). The three prong test is:

I. Is there a theory, generally accepted in the scientific community, that supports the conclusion that DNA forensic testing can produce reliable results?

II. Are there current techniques that are capable of producing reliable results in DNA identification and that are generally accepted in the scientific community?

III. In this particular case, did the testing laboratory perform generally accepted scientific techniques without error in the performance or interpretation of the tests?

*Polk*, 612 So. 2d at 390.

Here, Stewart claims that the laboratory failed to have (1) well-documented participation in a proficiency testing program; (2) there was no continuing education programs in the area of forensic DNA Analysis; and (3) the autorads were not independently measured and the results were not verified by at least two qualified persons. Stewart maintains that the resulting autorads here were not independently measured and the results were not verified by at least two qualified persons, thus the entire integrity and reliability of the test cannot be assumed. Stewart also alleges that there was no test of known samples to indicate any error in test performance. Therefore, for all these reasons, Stewart argues the trial court erred in allowing the testimony of Dr. Robert Giles as to the results of DNA testing.

The question then becomes, if there were indeed such failures, did the failures of the laboratory to have adequate and necessary safeguards for the performance of these tests amount to reversible error. Stewart claims yes; the State argues no.

Dr. Robert Giles, qualified as an expert, testified that his laboratory performed the test in Stewart's case under generally accepted scientific techniques, and that the test was performed without error. He also verified that the correct protocol was followed in this case and that he personally reviewed the protocol and the results of the test. He stated that he "looked at the autorads and made determination from the autorads, which are the final result in the case, and decided whether or not the samples had run appropriately and so forth." Dr. Giles stated that, "The fortunate thing about this type of testing that we perform and that other laboratories also perform, would be that if an error is made in terms of switching a sample or something of that type, it would end up in excluding the individual rather than falsely including that individual." (Emphasis added.)

Stewart claims the procedures used in the present case fails. He alleges no well-documented participation in a proficiency testing program was established. Dr. Giles, however, testified that, "We have participated in all proficiency testing programs that have been made available to us. . . . We have to file documents with the proficiency testing agency, and I have photocopies of all the documents we have filed regarding proficiency testing that has been performed at GeneScreen."

The trial court, following the three-prong test advanced by *Polk v. State*, *supra*, and at the request of the defendant, appointed Dr. Robert Lewis of the University of Mississippi Medical Center to do a separate DNA test on the blood samples, even granting a continuance for that specific purpose. An independent laboratory, Life Codes, conducted the same tests for Stewart that GeneScreen had

conducted for the State. Stewart elected not to call Dr. Lewis nor any technician from Life Codes.

This Court finds that all safeguards were taken in this case. The integrity of the DNA analysis was assured. The requirements announced in *Polk* were met. There is no error on this issue.

## VI.

This Court finds that all issues are either without merit or precluded from review by this Court. The decision of the lower court was correct and thus, should be affirmed in its entirety.

**AS TO COUNT I: CONVICTION OF SEXUAL BATTERY AND SENTENCE TO TEN (10) YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. AS TO COUNT II: CONVICTION OF SEXUAL BATTERY AND SENTENCE TO TEN (10) YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED; SENTENCE TO RUN CONSECUTIVELY WITH SENTENCE IN COUNT I. AS TO COUNT III: CONVICTION OF FORNICATION BETWEEN PERSONS FORBIDDEN TO INTERMARRY AND SENTENCE OF FIVE (5) YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED; SENTENCE TO RUN CONCURRENT WITH SENTENCES IN COUNTS I AND II. DEFENDANT TO PAY ALL COSTS.**

**LEE, P.J., PRATHER AND SULLIVAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**

1. Miss. Code Ann. § 9-1-105 reads, in pertinent part:

> (1) Whenever any judicial officer is unwilling or unable to hear a case . . . pursuant to the provision of Section 154, Mississippi Constitution of 1890, or any provision of the Code of Judicial Conduct, or for any other reason, the Chief Justice of the Mississippi Supreme Court, with the advice and consent of the majority of the justices of the Mississippi Supreme Court, may appoint a person as a special judge to hear the case or attend and hold a court.

> . . . .

> (6) A person appointed to serve as a special judge may be any presently sitting or retired chancery, circuit or county court judge or Supreme Court Justice, or any other person possessing the qualifications of the judicial office for which the appointment is made; . . .