ISHEE, J.,
Dissenting:
¶ 35. With regard to the majority’s decision, I respectfully dissent. The majority notes that, once Showers requested an attorney, the right to an attorney immediately attached; thus, any statements obtained from the accused during the subsequent police-initiated custodial questioning regarding the charge at issue are inadmissible. Balfour v. State, 598 So.2d 731, 742 (Miss.1992). The majority noted that the trial court erred by admitting the video that recorded the conversation between the officer and Showers. However, because Showers had two similar conversations with his mother and aunt (two non- *252 police officers), the majority found the admission of the videotaped conversation to be harmless error. I disagree.
¶ 36. At the time of the meeting in question between Showers and his mother and then the meeting between Showers and his aunt, he was in police custody and had requested an attorney. It is, therefore, undisputed that he could not be subjected to interrogation until he either received the assistance of counsel or initiated a conversation with the police. Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Since neither event occurred, the videotaped evidence must be excluded if it was the product of “interrogation” within the meaning of Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).
¶ 37. Police conduct may constitute “interrogation” even if a police officer does not pose direct questions to the suspect. In fact, the Mississippi Supreme Court has applied a broad interpretation to the term “interrogation” to include not only questioning, but rather “questioning and its functional equivalent.” Culp v. State, 933 So.2d 264, 273 (¶ 19) (Miss.2005). In In-nis, the United States Supreme Court defined “functional equivalent” to mean “words or actions ... that the police should know are reasonably likely to elicit an incriminating response from the suspect.” Innis, 446 U.S. at 301, 100 S.Ct. 1682. In broadening its definition of “interrogation,” the Supreme Court in Innis noted that its concern in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) was that “the ‘interrogation environment’ created by the interplay of interrogation and custody would ‘subjugate the individual to the will of his examiner’ and thereby undermine the privilege against compulsory self-incrimination.” Innis, 446 U.S. at 299, 100 S.Ct. 1682.
¶ 38. Because it is difficult to determine what police measures and procedures actually fall under this “functional equivalent” category, the Supreme Court stopped short of creating an exhaustive list of police techniques that are held to be interrogation practices. Likewise, the law in this state provides little guidance as to what procedures should be considered interrogation. Pannell v. State, 7 So.3d 277, 283 (¶ 13) (Miss.Ct.App.2008). This Court has stated that interrogation “must reflect a measure of compulsion above and beyond that inherent in the custody itself.” Id. The test does not examine the subjective intent of the police, but rather, whether the officer “should ‘have known his actions were reasonably likely to elicit an incriminating response.’ ” Id.
¶ 39. Not only had Showers repeatedly requested counsel, neither he nor his mother or aunt were ever told or made aware that the room was “bugged.” He was never told he was going to be recorded, nor were there signs, inside or outside the room, that said he was going to be recorded. Had Showers known that the room was equipped with a video and audio recording device, it is my opinion that he would have never said anything to anyone, especially without a lawyer present. When Officer Criddle allowed Showers the opportunity to meet and speak with his mother and aunt, in my opinion, it was not only likely, but highly probable, that Showers would make a statement that the prosecutor might seek to introduce at trial. There is no other reason for taping the conversation. It follows that the police conduct in this case was the “functional equivalent” of deliberate, direct interrogation.
¶ 40. If Officer Criddle had felt that Showers was a danger to himself or his mother and aunt, there were alternate ways to observe the moment. In my opin *253 ion, had an officer accompanied his mother and aunt to the interrogation room (which is essentially what happened when the recorder was allowed to continue to record their conversation), their conversations would have sounded much different. Showers knew the dangers of speaking without a lawyer present — /or this exact reason. He even said so to his aunt, which is exactly why he had requested a lawyer.
¶ 41. What makes this even more offensive, is the fact that this is the stated policy of the Columbus Police Department — that is, essentially to obtain evidence through secretive, shady, and illegal means. Finally, I am of the opinion that Officer Criddle’s continuous communication attempting to persuade Showers into changing his mind with regard to his waiver of rights was also the “functional equivalent” of interrogation and, therefore, a violation of his constitutional rights — a violation I would never deem to be harmless.
¶ 42. In support of their harmless-error theory, the majority cites to Brown v. State, 293 So.2d 425 (Miss.1974) which states that the questioning of someone by a non-officer should not be regarded as an interrogation. Although, that is the proposition set forth in Brovm, there are differences between that case and Showers’s situation. The defendant in Brown, an adult, was visited in jail by the mother of the deceased and questioned as to why he had killed her daughter. Id. at 427. The deceased woman’s mother was allowed to testify about the conversation she had with Robert Brown.
¶ 43. Here, we have a different situation. The most significant difference is that Showers had repeatedly requested to speak with a lawyer before speaking with anyone. And his right to a lawyer was constitutionally guaranteed. First, I find it strange that Officer Criddle was able to arrange for Showers’s mother and aunt to meet with him, but for some reason, he was unable to find a lawyer for Showers. Second, Brown had the opportunity to cross-examine his witness on the stand. In this case, Showers had no such luxury; the only options Showers had would have been to take the stand himself and speak about the videotaped conversations or to remain silent.
¶ 44. There is nothing in the record, and Officer Criddle admitted that neither Showers nor his mother and aunt were aware their conversations were being recorded and that anything said in the room could be used against him in the court of law. The State contends that because the camera was visible, Showers should have known that he was being watched and recorded. I disagree. Although Showers might have seen the camera, it is safe to assume that because of his age and because of the situation he was in, Showers more likely believed that anything he said to his mother, of all people, would be free from the eyes and ears of the police.
¶ 45. Accordingly, I would reverse and remand for a new trial in accordance with this opinion.
GRIFFIS, J., JOINS THIS OPINION.