Jesse **COMBS**, Appellant,

v.

**COMMONWEALTH of Kentucky,** Appellee.

Court of Appeals of Kentucky.

Feb. 7, 1969.

Rehearing Denied March 28, 1969.

Henry E. Hughes, James E. Keller, Lexington, for appellant.

John B. Breckinridge, Atty. Gen., James H. Barr, Asst. Atty. Gen., Frankfort, for appellee.

WADDILL, Commissioner.

■ Appellant, Jesse Combs, 19 years of age, was convicted of the crime of murder and sentenced to life imprisonment. On this appeal his sole ground for reversal of his conviction is that the trial court erred in permitting the Commonwealth to introduce in evidence at his trial his alleged oral confession of the crime. Appellant urges that the alleged confession was elicited under circumstances that were violative of the standards enunciated by the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. In summary, the standards governing custodial interrogation of a criminal suspect are that, prior to police questioning, the suspect must be informed that he has a right to remain silent; that any statement he does make may be used as evidence against him and that he has a right to the presence of an attorney, either retained or appointed; however, the suspect may waive these rights if the waiver is made voluntarily, knowingly and intelligently. Miranda v. Arizona, supra; also see Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; Jewell v. Commonwealth, Ky., 424 S.W.2d 394 and Hamilton v. Commonwealth, Ky., 401 S.W.2d 80.

Appellant, who was being sought in connection with the murder of Dora Haden, occasionally herein referred to as "Effie," whose lifeless and semi-nude body was found near her secluded mountain home, surrendered to Sergeant Louis Babbs of the Kentucky State Police. Mrs. Haden's death was caused by a rifle bullet wound in her head.

At trial, when the Commonwealth sought to show by Sergeant Babbs that appellant had orally confessed that he had shot Dora Haden, appellant's counsel objected and moved the court to suppress the alleged confession on the ground that it had been elicited in violation of appellant's Fifth Amendment privileges against self incrimination. The trial court, after conducting a hearing on this question in chambers (and out of the jury's presence and hearing) decided that the confession as related by Sergeant Babbs was admissible and accordingly overruled appellant's objection and motion.

When the trial resumed before the jury Sergeant Babbs testified that immediately after appellant was taken into custody he was informed of his right to remain silent, of his right to counsel, either personally retained or court appointed, and of the Commonwealth's intention to use against him any incriminating statement he made. Sergeant Babbs stated that when appellant was asked if he understood, that he responded in the affirmative. Sergeant Babbs further stated that appellant was then taken to the state police barracks at Richmond, Kentucky, where he was photographed, fingerprinted and again informed of his constitutional rights. We quote from the trial record the pertinent part of Babbs' testimony as to what then occurred:

"A. * * *. Then I asked him if he understood what these rights were and asked him if he would like to make a statement.

"D16. Did he reply to you?

"A. Yes. He said he would like to make a statement but he would like to talk to an attorney first.

"D17. Then what happened?

"A. I said all right. I want to read you something. I reached in the basket on my desk and I read him the ballistics report on a rifle and bullet.

"D18. In this case?

"A. Yes.

"D19. Then what happened?

"A. Mr. Combs started to cry and he put his head in his hands and he said those shoes that made the tracks are at daddy's, and I stopped him there—

"OBJECTION: MR. HUGHES:

"THE COURT: OVERRULED.

"A. And I stepped to the door and called Sergeant Gay and Sergeant Gay came in and kinda hunkered down beside the desk, and I said do I understand you now want to make a statement without an attorney and he said that is right. He was again advised that he didn't have to make a statement and he said I want to talk about this and I asked him are you saying you had something to do with Effie Haden's death? And he said yes, I did. And I said did you have anyone with you and he said no, I did it by myself.

"D20. What else did he tell you?

"A. I asked him when he did it and he said he did it right after Squirrely Green and his men left the house. That he was up on the hill watching, and when they left, he slipped down to the back gate. That Mrs. Haden was standing near the back porch, talking to herself, with her back to him, and I asked him if he shot her and he said he did and I asked him where he aimed the gun, and he pointed somewhere in the area of her head. I then asked him how he got her in the cellar, if he did, and he said he took her by the hands and dragged her up to the cellar and dragged her in and laid her down, in the cellar. I asked him if he put anything in the cellar with her, and he said he threw a shoe and a pair of panties in, too.

"D21. Did he tell you anything else?

".A. He said he went to the house and took this old rifle and went around the hill and over near Dorothy Gazara's house and hid the old rifle behind a tree and went on home, and helped his father set tobacco.

"D22. Did he tell you anything further about the old rifle?

"A. Yes. He said he brought it to Richmond with him the next morning and sold it to Carl Adams, for $10.00. He said he tried to sell it a couple of other places, but couldn't."

In these circumstances the issue narrows to whether appellant's confession was a voluntary one or whether it was coerced in violation of appellant's wishes to remain silent until he had the advice of counsel.

■ We recognize that the purpose of custodial interrogation of a suspect is to obtain from him information that will either incriminate him or will otherwise lead to the apprehension and conviction of the guilty party (or parties). However, there is nothing unlawful about in-custody interrogation of criminal suspects by the police if the suspect is first advised of his constitutional rights and is then afforded an opportunity to exercise these rights prior to being questioned. Miranda v. Arizona, supra, specifically states that volunteered statements are not barred by the Fifth Amendment and further that their admissibility is not affected by the holding.

■ We are not avoiding coming to grips with appellant's contention that he refused to waive his constitutional rights when he asked Sergeant Babbs for counsel. Once the Fifth Amendment privilege is invoked, further police interrogation should cease. As we read Sergeant Babbs' testimony, Babbs respected appellant's request for counsel and refrained from further questioning him. The reading of the bal

listics report to appellant, which took only a matter of minutes, did not constitute interrogation that would infringe upon the guidelines of Miranda v. Arizona, supra. The reading of the report to appellant merely furnished him some of the information the police had already acquired by their investigation independent of their talk with appellant. It seems to us that it was to appellant's advantage to be informed of it.

In reaching this conclusion we are aware of the recent case of People v. Fioritto, 68 Cal.Rptr. 817, 441 P.2d 625, wherein the Supreme Court of California, after referring to the safeguards pointed out in Miranda v. Arizona, supra, held that these safeguards had been violated by in-custody interrogation of the accused by the police. However, the facts in the California case are quite different from those in the instant one. In the California case the accused had refused to sign a waiver of his constitutional rights. Nevertheless, questioning of the accused did not cease. In the instant case there was no interrogation of the accused after he told police he desired to talk with an attorney. Hence, in the former case there was a violation of his Fifth Amendment privilege to remain silent while in the latter case the accused voluntarily waived this privilege.

■ We hold that the evidence justified the trial court in finding that the appellant, after he had been effectively warned of his constitutional rights, had voluntarily waived these rights after being informed that the ballistics report showed the bullet taken from the head of Mrs. Haden had been fired from the rifle that appellant was known to have sold shortly after Mrs. Haden's body was found. Appellant, himself, does not claim the police resorted to unlawful methods to coerce him to implicate himself in the crime. Appellant's own testimony was that he did not make any statement to Sergeant Babbs or to anyone else that would incriminate him in the murder.

Under the facts and circumstances presented by this record we find that the trial court correctly admitted the alleged confession in evidence and therefore conclude that appellant was given a fair trial.

The judgment is affirmed.

MONTGOMERY, C. J. and HILL, OSBORNE, STEINFELD and REED, JJ., concur.

PALMORE and MILLIKEN, JJ., dissent.

PALMORE, Judge (dissenting).

I dissent upon the ground that, in my opinion, showing the incriminating ballistics report to the appellant after he had expressed his desire for counsel was tantamount to further interrogation.

"If * * * he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him." Miranda v. Arizona, 384 U.S. 436, 444–445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–707 (1966).

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege *cannot be other than the product of compulsion, subtle or otherwise.* Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with an attorney and to have him present during any subsequent questioning." (Emphasis added.) *Id.,* at 384 U.S. 474, 86 S.Ct. 1627–1628, 16 L.Ed.2d 723.

The majority opinion evades *Miranda* by holding that in merely supplying "information" to the appellant the police sergeant was not questioning him. It seems to me, however, that such an interpretation is untenably narrow. The purpose of a question is to get an answer. Anything else that has the same purpose falls in the same category and is susceptible of the same abuses *Miranda* seeks to prevent. The only possible object of showing the ballistics report to the appellant in this case was to break him down and elicit a confession from him. The question was implied if not spoken. Everything was there but a question mark. It was a form of question and got the desired result.

I am just as loath to hold incriminating evidence inadmissible as are the other members of this court. But *Miranda* is the law and, as such, should be construed dispassionately and fairly. Whether we like it or not is beside the point. A civilized society cannot survive under a system in which each man obeys only those laws and decisions that he personally judges to be right. Above all, the courts themselves should be the first exemplars of law and order.

MILLIKEN, J., joins in this dissenting opinion.