**Jesse COMBS, Petitioner-Appellant,**

v.

**John W. WINGO, Respondent-Appellee.**

**No. 71-2036.**

United States Court of Appeals.
Sixth Circuit.

July 31, 1972.

---

Barry Benton, Lexington, Ky., for appellant.

John B. Breckinridge, Atty. Gen. of Kentucky, Frankfort, Ky., for appellee.

Before WEICK, PECK and McCREE, Circuit Judges.

McCREE, Circuit Judge.

We consider an appeal from the dismissal of a petition for a writ of habeas corpus. At the age of 19 years, appellant was convicted of murder by Clark County (Kentucky) Circuit Court and was sentenced to a term of life imprisonment. His conviction was affirmed by the Kentucky Court of Appeals. Two judges dissented on the ground that evidence of a confession obtained in violation of appellant's constitutional rights had been introduced at his trial. After exhausting state remedies, he filed this petition for a writ of habeas corpus in the United States District Court for the Eastern District of Kentucky.

The petition presents two issues of constitutional dimension: (1) appellant asserts that his retained attorney failed to subpoena witnesses who would have supported his defense, and that this omission denied him the effective assistance of counsel guaranteed by the Fourteenth Amendment; *cf.*, Johns v. Perini, 462 F.2d 1308 (6th Cir., 1972); and (2) he asserts that his privilege against self-incrimination was violated when a Kentucky State Police Officer, Sergeant Babbs, was permitted to testify, over objection, about an oral confession elicited from Combs by police after he had invoked his right to remain silent. The District Court, without holding a hearing or making reference to the trial transcript, dismissed the petition in reliance upon the opinion of the Kentucky Court of Appeals. Combs v. Commonwealth, 438 S.W.2d 82 (1969).

Because we conclude that appellant's constitutional rights were violated by the introduction of Sergeant Babbs' testimony concerning the confession, we need not consider the issue of effective assistance of counsel, which is one which usually cannot be resolved without a full inquiry into the circumstances of the trial. *See* Johns v. Perini, *supra*; Holnagel v. Kropp, 426 F.2d 777, 779 (6th Cir. 1970).

The opinion of the Kentucky Court of Appeals describes the events relating to the confession as follows. Combs, who was being sought for the murder of which he has been convicted, surrendered to Sergeant Babbs. He was informed of his constitutional rights and was taken to the State Police barracks at Richmond, Kentucky, where he was photographed and fingerprinted. His rights were again explained to him, and then, as Sergeant Babbs testified, the following occurred:

"A. * * *. Then I asked him if he understood what these rights were and asked him if he would like to make a statement.

"D16. Did he reply to you?

"A. Yes. He said he would like to make a statement but he would like to talk to an attorney first.

"D17. Then what happened?

"A. I said all right. I want to read you something. I reached in the basket on my desk and I read him the ballistics report on a rifle and bullet.

"D18. In this case?

"A. Yes.

"D19. Then what happened?

"A. Mr. Combs started to cry and he put his head in his hands and he said those shoes that made the tracks are at daddy's, and I stopped him there—

"OBJECTION: Mr. HUGHES:

"THE COURT: OVERRULED.

"A. And I stepped to the door and called Sergeant Gay and Sergeant Gay came in and kinda hunkered down beside the desk, and I said do I understand you now want to make a statement without an attorney and he said that is right. He was again advised that he didn't have to make a statement and he said I want to talk about this and I asked him are you saying you had something to do with Effie Haden's death? And he said yes, I did. And I said did you have anyone with you and he said no, I did it by myself.

"D20. What else did he tell you?

"A. I asked him when he did it and he said he did it right after Squirrely Green and his men left the house. That he was up on the hill watching, and when they left, he slipped down to the back gate. That Mrs. Haden was standing near the back porch, talking to herself, with her back to him, and I asked him if he shot her and he said he did and I asked him where he aimed the gun, and he pointed somewhere in the area of her head. I then asked him how he got her in the cellar, if he did, and he said he took her by the hands and dragged her up to the cellar and dragged her in and laid her down, in the cellar. I asked him if he put anything in the cellar with her, and he said he threw a shoe and a pair of panties in, too.

"D21. Did he tell you anything else?

"A. He said he went to the house and took this old rifle and went around the hill and over near Dorothy Gazara's house and hid the old rifle behind a tree and went on home, and helped his father set tobacco.

"D22. Did he tell you anything further about the old rifle?

"A. Yes. He said he brought it to Richmond with him the next morning and sold it to Carl Adams, for $10.00. He said he tried to sell it a couple of other places, but couldn't."

Combs v. Commonwealth, *supra*, 438 S. W.2d at 83–84.

We conclude that his statement was made involuntarily under Fifth Amendment standards. We agree with the two dissenting judges [1] of the Kentucky Court of Appeals that the following language from Miranda v. Arizona, 384 U. S. 436, 473–474, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966), is dispositive of this issue:

Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent,

---

[1]. The author of the dissenting opinion apparently did not arrive at his decision without some soul-searching. He said:
   I am just as loath to hold incriminating evidence inadmissible as are the other members of this court. But *Miranda* is the law and, as such, should be construed dispassionately and fairly.
Whether we like it or not is beside the point. A civilized society cannot survive under a system in which each man obeys only those laws and decisions that he personally judges to be right. Above all, the courts themselves should be the first exemplars of law and order.

the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege *cannot be other than the product of compulsion, subtle or otherwise.* Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with an attorney and to have him present during any subsequent questioning. (Emphasis added.)

Combs v. Commonwealth, *supra,* 438 S. W.2d at 85 (Palmore, J., with whom Milliken, J., concurred, dissenting).

The purpose of a question is to get an answer. Anything else that has the same purpose falls in the same category and is susceptible of the same abuses *Miranda* seeks to prevent. The only possible object of showing the ballistics report to the appellant in this case was to break him down and elicit a confession from him. The question was implied if not spoken. Everything was there but a question mark. It was a form of question and got the desired result.

*Id.* at 86. Accordingly, the judgment of dismissal is reversed, and the case is remanded with instructions to issue the writ unless appellant is retried by the Commonwealth within a reasonable time without the introduction of any evidence of the unconstitutionally obtained confession or any evidence obtained therefrom. *See* Mitchell v. Salisbury, 443 F. 2d 324 (6th Cir. 1971).

Reversed and remanded.[2]

---

2. The court has been hampered in its consideration of this case because the Attorney General of Kentucky neither filed a timely brief in this appeal nor appeared at the hearing. The *Commonwealth's* brief was originally due on April 30, 1972, but upon appellee's motion filed May 9, 1972, which indicated that appellant's brief had not been timely served upon appellee, that date was extended until June 15, 1972. We received the brief on June 16, 1972.