791 F.2d 933
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
PHILLIP P. JOVANOVIC, Petitioner-Appellant,
v.
TED ENGLE, SUPERINTENDENT, Respondent-Appellee.
 84-4012
 United States Court of Appeals, Sixth Circuit.
 4/25/86
 
 AFFIRMED
 S.D.Ohio
 On Appeal from the United States District Court for the Southern District of Ohio
 Before: ENGEL, KENNEDY and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Phillip P. Jovanovic appeals the judgment entered in the United States District Court for the Southern District of Ohio denying his petition for a writ of habeas corpus brought pursuant to 28 U.S.C. Sec. 2254. Jovanovic was found guilty of murder after being tried to the court in the Lucas County (Ohio) Court of Common Pleas. His conviction was affirmed by the Ohio Court of Appeals for the Sixth Appellate District and the Ohio Supreme Court denied leave to appeal. This habeas petition followed.
 
 
 2
 The constitutional challenges raised in this appeal involve Jovanovic's interrogation on February 24, 1980, by Toledo homicide detective Arthur Marx. Detective Marx interrogated Jovanovic in the course of his investigation of the death of five-year old Matthew Catlett. Matthew Catlett died earlier that day from shock which a forensic pathologist testified was brought on by blunt force injuries and burns. See Jt. App. at 568-69. Detective Marx explained the constitutional rights to which Jovanovic was entitled, as required by Miranda v. Arizona, 384 U.S. 436 (1966). After he stated that he understood these rights and after he answered several questions and denied being directly involved in the homicide, Jovanovic asked that the interrogation be terminated. After the request was made, Detective Marx stopped the questioning. This interview was taped with prior approval from Jovanovic.
 
 
 3
 Detective Marx then left the room and walked into the hallway where he had a conversation with Gilbert Solly, the father of Gregory Solly, a co-suspect. Minutes later, Detective Marx, Gilbert Solly and Gregory Solly went back to the interrogation room where Jovanovic was still seated. Detective Marx made the statement that he had sufficient evidence to charge Jovanovic and Solly with the murder of Matthew Catlett. Then, Detective Marx stated to Jovanovic that Solly had implicated him in the Catlett killing. Solly volunteered to cooperate and asked Detective Marx what to do. Detective Marx responded by saying they should tell the truth. He testified that Jovanovic then said that, 'they were all responsible.' After a short conversation, Jovanovic also agreed to cooperate. However, it was not until some two hours later that Detective Marx interrogated Jovanovic again, but only after administering renewed Miranda warnings. The second interview was also taped and introduced at the trial.
 
 
 4
 On appeal to this court, Jovanovic challenges the denial of his habeas petition on three bases. First, he contends that the district court erred in concluding that Detective Marx did scrupulously honor his request to terminate the initial questioning. The district court found that Detective Marx honored Jovanovic's request, and that interrogation resumed only after Jovanovic waived his Miranda rights anew. The district court found that this procedure complied with the holding of Michigan v. Mosley, 423 U.S. 96 (1975). The court concluded:
 
 
 5
 In view of the time lapse between the two taped confessions, the detailed explanations on two separate occasions of petitioner's Miranda rights, the willingness of petitioner to present his story, and the demonstrated effort on the part of Detective Marx to ensure that petitioner's rights were understood and honored, this Court finds that petitioner's rights were 'scrupulousy honored.'
 
 
 6
 Jovanovic v. Tate, No. C-2-84-0018, slip op. at 19 (S.D. Ohio, Nov. 18, 1984) (footnote omitted).
 
 
 7
 Second, Jovanovic challenges the district court's finding that Detective Marx obtained a valid Miranda waiver prior to eliciting incriminating statements in the second interview. In this regard, Jovanovic alleges that he did not understand and that he did not have the ability to waive them. Jovanovic's I.Q. is 52, an intelligence level characterized by the state trial court as 'bordering on mild mental retardation.' Jovanovic, supra, slip op. at 13. The court examined the totality of the circumstances, and concluded that Jovanovic did voluntarily, knowingly, and intelligently waive his Miranda rights. Some of the circumstances the district court found to be important included Jovanovic's ability to read aloud the warning card given to him by Detective Marx, his interpretation for the detective of what he read from the card, and Jovanovic's presence of mind to expressly cut off the initial interview. Id. at 13-15.
 
 
 8
 Third, Jovanovic challenges the district court's finding that the inculpatory statements were not voluntarily made. Jovanovic made statements in the nature of a confession during his second interview with Detective Marx. He alleges that these statements were made as a result of coercion produced when Detective Marx informed him about the statements made by other suspects. He contends that this, in addition to his low intelligence, rendered him unable to resist the coercive pressure of the interrogation. The district court applied the totality of the circumstances test of Schenckloth v. Bustamonte, 412 U. S. 218 (1973), and concluded:
 
 
 9
 The Court finds that the facts and circumstances of this particular case support a finding that petitioner's confession was voluntary. While petitioner was understandably upset over the death of Matthew Catlett and the situation in which he thereafter found himself, his ability to understand his position, his attempts to negate and to minimize his own liability, and his knowledge of his legal rights all support the conclusion that his statements were knowingly and voluntarily made.
 
 
 10
 Jovanovic, supra, slip op. at 21.
 
 
 11
 We agree with the district court that Detective Marx did carefully explain the Miranda rights to Jovanovic initially and did scrupulously honor Jovanovic's request to terminate the initial questioning. We are also satisfied that despite his low intelligence level, Jovanovic did fully comprehend the rights as explained to him. However, the court is not altogether satisfied that Agent Marx' second meeting with Jovanovic and with a co-suspect and the latter's father was not motivated in part, at least, by the officer's desire to induce Jovanovic to resume his recital of the events which led to Matthew Catlett's death and which resulted in Jovanovic's comment at that time that they were all responsible. Nevertheless, to the extent that this statement was procured in violation of Michigan v. Mosley, supra; see also Combs v. Wingo, 465 F.2d 96 (6th Cir. 1972), the admission of such evidence in the course of the bench trial must be viewed as harmless error beyond a reasonable doubt.
 
 
 12
 Detective Marx' testimony that Jovanovic had earlier commented that 'they were all responsible' did not add to the evidence already known by the police or to the quantum of evidence of Jovanovic's guilt. A subsequent statement given to the police two hours later came only after he was again thoroughly apprised of his Miranda rights and does not appear to be tainted by this isolated incident. In addition, the evidence of Jovanovic's own role in the vicious killing was fully corroborated by the completely independent testimony of Mark Mitruk who, with Greg Solly and Jovanovic, had participated in the brutal beatings. Mitruk's testimony not only fully established and confirmed Jovanovic's role in the killing but his state of mind as well. Mitruk confirmed Jovanovic's own statements concerning his hatred for the child and his frequently expressed intention to kill it. Independent of Jovanovic's own statements, the evidence of his role is so overwhelming both in its detail and its motivation that we must conclude that no finder of fact could reasonably have reached a different result had the tainted statement 'we are all responsible' not been received in evidence.
 
 
 13
 Accordingly, the judgment of the district court is AFFIRMED.