ISHEE, J.,
for the Court.
¶ 1. Raymond Louis Pannell was convicted of arson and sentenced to twenty years, with ten years suspended, in the custody of the Mississippi Department of Corrections (MDOC). Aggrieved by his sentence and conviction, Pannell now appeals, contending that the circuit court erred in failing to suppress his confession to law enforcement officers after he invoked his right to counsel. This Court finds that Pannell’s Fifth and Sixth Amendment rights to counsel were violated by a police-initiated interrogation, which resulted in Pannell’s confession and occurred after Pannell asserted his right to have counsel present during questioning. For this reason, the confession, which was made without the benefit of counsel, should have been suppressed. Therefore, the judgment of the circuit court is reversed, and this case is remanded to the court for proceedings consistent with this opinion.
FACTS
¶ 2. Raymond and Teresa Pannell were married for twenty-three years. While married, the Pannells lived in a home that *280 they personally built located in Baldwyn, Mississippi. The Pannells divorced on November 24, 2004. As part of the divorce settlement, Teresa was granted the exclusive use, possession, and control of the house until their minor children reached the age of twenty-one. The property was vacant for a period of time after the divorce. During this time, Teresa had the locks changed on both the doors and the gate to the fence surrounding the property-
¶3. On December 4, 2004, police responded to a call that a fire had broken out on the property. When they arrived, they found that the Pannells’ house had burned down. After investigating the scene and speaking to witnesses, police identified Pannell as a suspect. Later that evening, Pannell was placed under arrest for trespass and arson. He was given an initial appearance two days later at the Prentiss County Justice Court where he was represented by his attorney, and a $50,000 bond was set.
¶ 4. Subsequently, during his incarceration, a meeting was arranged between Pannell and the jail administrator, Officer Brian Taylor. Officer Taylor also happened to be the investigating officer of the alleged arson. Although it is disputed as to whom actually initiated the meeting and its purpose, it is undisputed that the meeting took place in the jail’s law library and was witnessed by fellow officer, Jeremy Pace. At some point during the meeting, the conversation turned to the subject of the fire. Before answering any questions about the fire, Pannell notified Officer Taylor that he did not want to talk without his attorney present. Officer Taylor testified that he honored that wish by not explicitly questioning Pannell about the fire. However, subsequent to Pannell’s request for his attorney, Officer Taylor notified Pannell that he had compiled strong evidence against him and proceeded to show Pannell the contents of the evidence file. This file included photographs of the crime scene and an incriminating statement taken from Pannell’s brother, Herman Pannell. After viewing the evidence against him, Pannell decided to confess to the crime. Prior to taking the confession, the officers read Pannell his Miranda rights. Pannell then signed a Miranda waiver. Pannell’s confession was written down by Officer Taylor and was signed by Pannell.
¶ 5. Shortly after Pannell gave his confession, his case was presented to the Prentiss County grand jury. The grand jury heard testimony regarding the charge of arson. However, based upon the testimony of Officer Taylor at the suppression hearing, it appears that Pannell’s confession was not presented to the grand jury. Finding that there was insufficient evidence to indict Pannell, the grand jury failed to return a true bill against him.[1] Though the grand jury retired on April 1, 2005, Pannell was not released from jail until May 1, 2005, having remained in jail for an additional month after the grand jury failed to indict him.
¶ 6. After Pannell’s release, the State presented its case to the grand jury a second time on August 22, 2005. This time it appears the State did present Pannell’s confession before the grand jury. Having the benefit of Pannell’s confession, the State was able to obtain an indictment. As a result, Pannell was re-arrested and charged with arson.
*281 ¶ 7. Prior to trial, Pannell filed a motion to suppress his confession contending that it was given involuntarily and in violation of his Fifth and Sixth Amendment rights. A suppression hearing was held on September 26, 2006. After hearing the testimony of both Officer Taylor and Officer Pace, the circuit court found that there was sufficient evidence for concluding that Pannell “initiated” contact with Officer Taylor. Further, the circuit court opined that the presentation of evidence by Officer Taylor to Pannell did not constitute police interrogation. As a result, the circuit court found that Pannell’s statements were “freely, knowingly, and voluntarily given” and were made after the execution of a valid Miranda waiver and affidavit that had been signed and witnessed. The circuit court denied Pannell’s motion to suppress the confession, and the State was permitted to use it as evidence at trial. Pannell was convicted of arson on October 6, 2006. Pannell filed a motion for acquittal notwithstanding the verdict or, in the alternative, for a new trial, which subsequently was denied. Pannell now appeals the circuit court’s ruling.
STANDARD OF REVIEW
¶ 8. In reviewing a trial court’s denial of a motion to suppress a confession, “we apply the familiar general rule that since the trial court sits as the fact-finder when determining the issue of whether an accused’s confession has been intelligently, knowingly and voluntarily given, we will only reverse the trial court’s determination of this issue when such determination is manifestly wrong.” Glasper v. State, 914 So.2d 708, 716(¶ 21) (Miss.2005) (citing Manix v. State, 895 So.2d 167, 180(¶ 39) (Miss.2005)). In order for us to reverse a trial court’s determination on the admissibility of a confession into evidence, the trial court must have committed manifest error, applied an incorrect legal standard, or rendered a decision contrary to the overwhelming weight of the evidence. Id. at 716-17(¶21) (citing Thorson v. State, 895 So.2d 85, 116(¶ 73) (Miss.2004)). Further, “there is no doubt that a confession is admissible only after the State has proven beyond a reasonable doubt that the accused’s confession was not the product of promises, threats or inducements.” Id. at 717.
ANALYSIS
I. Whether the circuit court erred in denying Pannell’s motion to suppress his confession as the statement was obtained after he invoked his right to counsel.
¶ 9. Pannell contends that his confession on March 12, 2005, was taken at a time after he had asserted his right to have counsel present during questioning. Pannell further contends that regardless of whom initiated the meeting between Pan-nell and Officer Taylor, the presentation of evidence by Officer Taylor to Pannell constituted a police-initiated interrogation. Pannell argues that because the interrogation occurred after his request to see his attorney, his right to counsel was violated, and therefore, any subsequent waiver of his rights should have been held invalid. Thus, Pannell contends his confession should have been suppressed at trial. In analyzing this issue, we must consider: (1) whether Pannell asserted his right to counsel, (2) whether showing Pannell the evidence file constituted a police-initiated interrogation, and if so, (3) whether Pan-nell effectively waived his right to counsel.
A. Pannell’s Right to Counsel
¶ 10. An accused’s Sixth Amendment right to counsel accrues once the accused is in custody. Brink v. State, 888 So.2d 437, 447-48(¶ 28) (Miss.Ct.App.2004) *282 (citing Balfour v. State, 598 So.2d 731, 743 (Miss.1992)). “Specifically, the right attaches at the point in time when the initial appearance ought to have been held.” Id. at 448(¶ 28) (citing McGilberry v. State, 741 So.2d 894, 904(¶ 17) (Miss.1999)). Once the accused asserts the right to an attorney, the right attaches and “any statements obtained from the accused during subsequent police-initiated custodial questioning regarding the charge at issue (even if the accused purports to waive his rights) are inadmissible.” Balfour, 598 So.2d at 742 (quoting McNeil v. Wisconsin, 501 U.S. 171, 179, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)). “An accused ... having expressed his desire to deal with police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.” Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).
¶ 11. Clearly, Pannell’s right to counsel accrued prior to his confession to police. The record indicates that when Pannell was given an initial appearance, he appeared before the court with his attorney present. Further, it is undisputed that Pannell asserted his right to counsel prior to being questioned by police. The circuit court held that Pannell “initiated” contact with the police, citing to disputed evidence that Pannell had asked to meet with Officer Taylor; therefore, the court determined that Pannell’s confession was voluntary. However, both Officer Taylor and Officer Pace testified at the suppression hearing that Pannell requested to speak to his attorney before he answered any questions about the fire. Therefore, even if Pannell initiated the meeting, he effectively cut off questioning by asking for his attorney. The United States Supreme Court, as well as our own supreme court, has made it clear that if the accused states that he wants an attorney, all interrogation must cease until his attorney is present. Minnick v. Mississippi, 498 U.S. 146, 150, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990); Edwards, 451 U.S. at 484-85, 101 S.Ct. 1880; Sanders v. State, 835 So.2d 45, 50(¶ 16) (Miss.2003). Therefore, the question of admissibility turns on whether Pan-nell, after asserting his right to counsel, reinitiated contact with the officers or whether his confession came in response to further interrogation by Officer Taylor.
B. Court’s Definition of “Interrogation”
¶ 12. The issue before us is a difficult one and has not been completely resolved in this state. It poses the question as to what police procedures should be considered “interrogation”; specifically, whether showing the accused the evidence compiled against him after he has requested to see his attorney constitutes custodial interrogation in violation of his constitutional rights. The circuit court was of the opinion that showing Pannell the evidence file after he asserted his right to counsel did not constitute “interrogation.” The circuit court judge based his decision on the fact that Officer Taylor did not explicitly question Pannell about the contents of the file or facts of the case. However, the term “interrogation” has not been limited to encompass only express questioning by the police. In fact, the Mississippi Supreme Court has applied a broad interpretation to the term “interrogation” to include not only questioning, but rather “questioning and its functional equivalent.” Culp v. State, 933 So.2d 264, 273(¶ 19) (Miss.2005) (citing Pierre v. State, 607 So.2d 43, 52 (Miss.1992)). In the landmark decision of Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the United States Supreme Court defined *283 “functional equivalent” to mean “words or actions ... that the police should know are reasonably likely to elicit an incriminating response from the suspect.” Innis, 446 U.S. at 301, 100 S.Ct. 1682. In broadening its definition of “interrogation,” the Supreme Court in Innis noted that its concern in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) was that “the ‘interrogation environment’ created by the interplay of interrogation and custody would ‘subjugate the individual to the will of his examiner’ and thereby undermine the privilege against compulsory self-incrimination.” Innis, 446 U.S. at 299, 100 S.Ct. 1682.
¶ 13. What police measures and procedures actually fall under this “functional equivalent” category have been difficult to ascertain. In Innis, the Supreme Court included in its survey of interrogation practices the use of psychological ploys such as those that “posit the guilt of the subject” or “cast blame on the victim or on society.” Id. However, the Court has stopped short of creating an exhaustive list of police techniques that are held to be interrogation practices. Likewise, the law in this state provides little guidance as to what procedures should be considered interrogation. This Court has stated that interrogation “must reflect a measure of compulsion above and beyond that inherent in the custody itself.” Bryant v. State, 853 So.2d 814, 819(¶ 13) (Miss.Ct.App.2003) (citing Innis, 446 U.S. at 300, 100 S.Ct. 1682). The test does not examine the subjective intent of the police, but rather, whether the officer “should ‘have known his actions were reasonably likely to elicit an incriminating response.’ ” Id. (quoting Snow v. State, 800 So.2d 472, 497(¶91) (Miss.2001)).
¶ 14. We now turn to whether confronting Pannell with the evidence that Officer Taylor had compiled against him violated the prohibition expressed in Innis against the use of “any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.” Innis, 446 U.S. at 301, 100 S.Ct. 1682. Because the inquiry is contextual, we review the known facts. Pannell invoked his right to cut off questioning, thereby triggering the prohibition in Innis against further interrogation. In response, Officer Taylor failed to cease communication with Pannell completely. Instead, he notified Pannell that he had compiled strong evidence against him. He then proceeded to lay out the contents of the evidence file before Pannell. In doing so, Officer Taylor showed Pannell pictures of the burned house, as well as an incriminating statement taken from Pannell’s brother. Only after Pannell reviewed the evidence did he decide to give a written statement confessing to the arson. The crucial inquiry is whether Officer Taylor should have known that his actions were reasonably likely to elicit an incriminating response from Pannell. We find, given the facts of this case, Officer Taylor should have known that his actions were likely to elicit a confession.
¶ 15. Though the facts suggest that this is a case of first impression in this- state, the Mississippi Supreme Court has once before been presented with the question of whether presenting evidence before an accused satisfies the definition of “interrogation.” See Balfour v. State, 580 So.2d 1203 (Miss.1991). In Balfour, the defendant and her accomplice were arrested and charged with capital murder and several armed robberies. Id. at 1204. The defendant requested counsel on at least two occasions, both upon her arrest and at her initial appearance. Id. at 1208. At some point after the defendant’s initial appearance, she was approached in her cell by *284 two officers who requested to speak to her. Id. The officers told the defendant that her accomplice had made a statement implicating her in their criminal activity. Id. Upon hearing this, the defendant acquiesced and submitted a written confession to the police. Id. Our supreme court held that given that the defendant had already asserted her right to counsel and that the officers’ tactics were carried out in an effort to elicit an incriminating response, the trial court’s admission of the defendant’s confession violated her Fifth and Fourteenth Amendment rights. Id. at 1209.
¶ 16. Although not identical, the police practices at issue are indistinguishable from the type of police practices criticized in Balfour. Similar to Balfour, the officers confronted Pannell with testimonial evidence implicating him in the crime after he asserted his right to counsel. Although the statement at issue was not given by an accomplice, as it was in Balfour, it carries equal weight. Both statements represent witness testimony that implied guilt directly on the accused. The statement with which Pannell was confronted was provided to police by his brother, Herman. The relevant portion of Herman’s statement alleges that on the day of the alleged arson, Pannell told Herman that he was going to burn the house and kill his ex-wife. The statement also alleges that Herman saw Pannell running from the house shortly before it caught on fire. Because the Balfour court determined that the incriminating testimonial evidence was presented in an effort to elicit an incriminating response from the accused, we are persuaded to hold the same is true in this case.
¶ 17. Similarly, we are of the opinion that the ploy of confronting an accused with the incriminating evidence against him, without being prompted by the accused’s request or inquiry into the evidence, is indistinguishable from the types of police practices criticized in Innis. As previously stated, Innis admonishes “positing the guilt of the subject.” Innis, 446 U.S. at 299, 100 S.Ct. 1682. It is easy to see from Pannell’s perspective, under the circumstances of this case, that being advised of incriminating evidence was the functional equivalent of police positing guilt. It is undisputed that prior to giving his confession to Officer Taylor, Pannell said very little, if anything at all, after asking to see his attorney. We can see no other rational reason why Officer Taylor would have presented the evidence to Pan-nell other than to posit Pannell’s guilt. Pannell did not ask Officer Taylor about the charges against him. He did not inquire into the evidence compiled by the police, nor did he ask to explicitly see the contents of the evidence file. It is obvious to this Court that Officer Taylor showed Pannell the evidence file in an attempt to have him reconsider his request for counsel; a tactic that proved successful as Pan-nell was not prompted to speak until he reviewed the evidence placed before him.
¶ 18. Further, the actions of the police in this case reflect a measure of compulsion above and beyond that inherent in the custody itself. Of primary significance is the manner in which the police detained Pannell, holding him long enough to obtain a confession and releasing him only after his written confession was secured. These actions, taken together, reflect a police effort, whether out of intent or neglect, to deprive Pannell of his constitutional rights.
¶ 19. First, it is obvious that the police ignored Pannell’s right to an attorney at two different points during the meeting. Officer Taylor knew or should have known that Pannell was represented by counsel because Pannell’s attorney appeared with him at his initial appearance. Therefore, *285 regardless of whom initiated the meeting between the two, Officer Taylor should have contacted Pannell’s attorney before any meeting took place. Even if the meeting was called for a simple jail administrative purpose, one which would not require assistance from Pannell’s attorney, that purpose clearly shifted when the subject of the fire was broached. From that point, the nature of the meeting clearly became investigatory, and the failure to notify Pannell’s attorney of the meeting was a violation of Pannell’s Sixth Amendment right to counsel. Second, once Pannell unequivocally asked to see his attorney, the interrogation should have ceased until his attorney was present. Therefore, Officer Taylor should have ended the conversation there; instead, he chose to continue the interrogation by placing the evidence file before Pannell violating his Sixth Amendment right to counsel. Finally, Pannell remained in jail for at least a month after the first grand jury failed to return a true bill against him with no promise of release.[2]
¶ 20. Under these circumstances, we believe that Officer Taylor should have known that his actions were likely to elicit an incriminating response. It is clear that his actions aided in creating a coercive interrogation environment that subjugated Pannell to the will of his examiners, thereby undermining his right against compulsory self-incrimination. Therefore, we conclude that confronting a suspect with the incriminating evidence compiled against him after he has invoked his right to counsel, and without any initiation on the part of the suspect, is precisely the kind of psychological ploy that definition of interrogation in Innis was designed to prohibit.
¶ 21. In so holding, we are mindful that courts have not spoken uniformly in this area of the law. Some appellate courts have allowed police to show an accused the evidence against him and then ask if he would reconsider his decision to remain silent. See Easley v. Frey, 433 F.3d 969 (7th Cir.2006) (holding that an officer’s statement regarding the evidence and the possible consequences of the charges did not rise to the level of interrogation); United States v. Payne, 954 F.2d 199 (4th Cir.1992) (finding that statements by law enforcement officials to a suspect regarding the nature of the evidence against the suspect did not constitute interrogation as a matter of law); United States v. Thierman, 678 F.2d 1331 (9th Cir.1982) (determining that police officers’ discussion of the investigation in accused’s presence after he invoked his right to counsel did not constitute interrogation). But see United States v. Poole, 794 F.2d 462 (9th Cir.1986) (holding that showing a suspected bank robber surveillance photos is interrogation). After reviewing these cases, these courts seem to support their decisions under one of two rationales: (1) that apprising a suspect of the charges and evidence against him or her is inherent in arrest and custody, and (2) a suspect should be informed of the evidence against him or her so he or she can make an informed decision on how to proceed.
¶ 22. This Court has several concerns with applying these rationales to this case. First, in reasoning that apprising a suspect of the evidence is inherent in arrest and *286 custody, the courts have considered mainly cases where a confession is made during arrest or normal booking procedures. This case is distinguishable in that Pan-nell’s statement did not come while being placed under arrest. In fact, Pannell had been in the custody of the Prentiss County Sheriffs Department for three months at the time his meeting with Officer Taylor took place. Further, the purpose of the meeting was not a matter inherent in the custodial relationship. Whether or not the meeting was originally called for a jail administrative matter, that purpose clearly shifted once the subject turned to the matter of the fire. Once Officer Taylor inquired about the fire, the purpose of the conversation clearly became investigatory and constitutional protection was necessary.
¶ 28. Second, this Court fails to see how apprising a suspect of the evidence after he asserts his right to counsel is necessary to help him make an informed decision about the case. It is unlikely that an accused is capable of weighing the evidence against him in order to make an informed decision without the assistance of counsel. By requesting to see his attorney, Pannell obviously did not believe that he could protect his interests without his attorney’s advice. Therefore, to apprise him of the evidence after he made his request only increased the danger that Pannell would feel compelled to reconsider his right to counsel.
¶ 24. This Court is persuaded by the decisions of those appellate courts that have noted that the practice of permitting interrogators to apprise a suspect of the evidence against him has been brought into doubt by Innis. See United States v. Pena, 897 F.2d 1075, 1082 n. 16 (11th Cir.1990) (disapproved on other grounds); Anderson v. Smith, 751 F.2d 96, 104 (2d Cir.1984) (overruled on jurisdictional grounds). Specifically, we agree with the bright line approach taken by the Eleventh Circuit in which the court stated, “[t]he law in this area is clear: once an accused requests counsel, the officer cannot ask questions, discuss the case, or present the accused with possible sentences and the benefits of cooperation.” United States v. Gomez, 927 F.2d 1530, 1539 (11th Cir.1991) (citing Innis, 446 U.S. at 299, 100 S.Ct. 1682; United States v. Johnson, 812 F.2d 1329, 1331 (11th Cir.1986)). Rather than attempting to list matters that police could or could not discuss with an accused in custody after he has asserted his right to counsel, the court reasoned that “[i]t best serves all interests, especially law enforcement, to remain close to the ‘bright line’: interrogation must cease when the accused in custody requests the presence of a lawyer before further interrogation.” Johnson, 812 F.2d at 1331. We agree with the Eleventh Circuit’s view that “an accused’s request for an attorney is per se an invocation of his Fifth Amendment rights, requiring that all interrogation cease.” United States v. Herrera, 711 F.2d 1546, 1557 (11th Cir. 1983) (quoting Fare v. Michael C., 442 U.S. 707, 719, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)). It is this Court’s position that when in doubt, adhering to the “bright line” rule is necessary to ensure that an accused’s Fifth and Sixth Amendment rights are fully protected.
¶ 25. We are further persuaded by the Sixth Circuit’s decision in Combs v. Wingo, 465 F.2d 96 (6th Cir.1972) as it provides facts very similar to this case. In Combs, the defendant surrendered to police after being sought out for murder. Id. at 97. After being informed of his constitutional rights, the defendant notified police that he would make a statement but only after first speaking to his attorney. Id. In response, police showed the defendant the *287 ballistics report on the rifle and bullet used in the crime. Id. at 98. This prompted the defendant to confess to the murder. Id. The Sixth Circuit held that under the circumstances, the defendant’s confession was taken involuntarily in violation of his Fifth Amendment rights. Id. at 98-99. In doing so, the court noted that the purpose of a question is to get an answer, and “[a]nything else that has the same purpose falls in the same category and is susceptible of the same abuses Miranda seeks to prevent.” Id. at 99. The court opined that the only possible object of showing the defendant the ballistics report was to elicit a confession from him. Id.
¶ 26. Applying the reasoning of the Sixth Circuit in Combs to the facts of this case, it is unlikely that Officer Taylor showed Pannell the evidence file for any reason other than for the purpose of eliciting a confession. Being the lead investigator on the case, Officer Taylor had obvious incentive to elicit information from Pannell about the fire. Further, Pannell never inquired about the charges or evidence against him during the meeting, nor did he request to see the evidence after he asserted his right to counsel. Since Pannell refused to answer questions about the fire, it is only rational to believe that Officer Taylor showed him the evidence file in order to prompt a response from him. Therefore, Officer Taylor’s actions, having the same purpose of explicit questioning, constituted interrogation made after Pan-nell asserted his right to counsel.
¶ 27. Accordingly, we conclude that Pannell’s confession was made involuntarily and in violation of his Fifth and Sixth Amendment rights.
C. Pannell’s Waiver of Rights
¶ 28. The State contends that even if Pannell did assert his right to counsel, that right was validly waived when he signed the Miranda waiver and voluntarily agreed to make a statement. Pannell argues that his signed waiver of rights was not effective because he did not initiate the interrogation. Pannell contends that regardless of whom initiated the initial meeting, once he asserted his right to counsel, the continued interrogation by Officer Taylor violated his constitutional rights. Therefore, a valid waiver could not be achieved.
¶ 29. In Edwards, the United States Supreme Court held that “an accused ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.” Edwards, 451 U.S. at 484-85, 101 S.Ct. 1880. In other words, once an accused has invoked his right to counsel, any statements given by the defendant in response to further police questioning are admissible only where (1) the defendant initiated further discussions with the police and (2) knowingly and intelligently waived the rights he had invoked. Smith v. Illinois, 469 U.S. 91, 95, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). Further, “when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.” Edwards 451 U.S. at 484, 101 S.Ct. 1880.
¶ 30. There is no evidence that Pannell initiated further discussions with Officer Taylor after asserting his right to counsel. Our supreme court has held that in order for a defendant to initiate a “conversation” as the word is used in Edwards, his *288 statements must express a desire to open up a generalized discussion about the investigation. Haynes v. State, 934 So.2d 983, 988-89 (¶¶ 19-23) (Miss.2006). It is clear to this Court that Pannell did not express a desire to open up a generalized discussion about the investigation after asserting his right to counsel. In fact, there is no evidence to show that he evinced a desire to open up any type of discussion. Pannell was prompted to speak only after Officer Taylor showed him the contents of the evidence file. Because we have already held that the actions of Officer Taylor constituted police-initiated custodial interrogation, a valid waiver cannot be established simply by showing that Pannell responded to the interrogation. Accordingly, Pannell’s supposed waiver of his constitutional rights during questioning was invalid.
¶ 31. Therefore, because Pannell’s confession was taken involuntarily in violation of his Fifth and Sixth Amendments rights and those rights were not validly waived, the trial court erred by failing to suppress Pannell’s confession.
II. Whether the circuit court’s failure to suppress the confession was harmless error.
¶ 32. We must now determine whether the admission of the confession constituted harmless error, thus, allowing the verdict to stand. “The admission of confessions obtained in violation of Edwards and its progeny constitutes trial error, and is therefore amenable to harmless error analysis.” Haynes, 934 So.2d at 991(¶ 31) (quoting Goodwin v. Johnson, 132 F.3d 162, 181 (5th Cir.1997) (questioned on other grounds)). “In order for a violation of a constitutional right to be held harmless, this Court must determine that the violation was harmless beyond a reasonable doubt.” Id. (quoting Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824,17 L.Ed.2d 705 (1967)). “Similarly, our supreme court has held ‘errors involving a violation of an accused’s constitutional rights may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming.’ ” Id. (quoting Clark v. State, 891 So.2d 136, 142(¶29) (Miss.2004)). Our supreme court has also held that the admission of a confession in violation of the defendant’s constitutional rights is not harmless error where the confession in question was the only confession available. Balfour, 580 So.2d at 1210.
¶ 33. Here, we cannot say that the trial court’s error in admitting Pannell’s confession was harmless beyond a reasonable doubt. Without Pannell’s confession, the State presented only circumstantial evidence establishing that Pannell actually set fire to Teresa’s house. Although the State submitted testimony that placed Pannell at the scene of the crime on the day in question, it presented little concrete evidence actually showing Pannell was responsible for setting the fire. Pannell was also able to provide an alibi by presenting three separate witnesses who testified to his whereabouts on the day in question. Further, his confession was the only confession to the crime obtained by the police. As a result, the State relied heavily on the confession to prove Pannell’s guilt.
¶34. The prosecutor obviously knew the important role that the confession played in proving his case, as it appeared to be the focal point of his closing argument. Specifically, he used the confession to corroborate the testimonies of several of his witnesses and refute Pannell’s testimony. First, he focused on the fire marshal’s assertion that the fire was caused by an open flame device, stating:
It was an open flame device used to put the house on fire. I think [the fire marshal] used the analogy of putting the *289 flag on fire and it burning and then causing the rest of the house to go up in flames. Like lighting the curtains in the patio room, which is exactly what the defendant said he did in his confession, in his statement that he gave to the authorities that he signed off on. That’s exactly what he said happened, and it matches up with what the fire marshal said caused the fire.
Second, the prosecutor used the confession to corroborate Herman’s testimony that he saw Pannell bring a gun with him to the house on the day of the fire. He stated, “[Pannell] even says in his statement that he had a gun with him, and that’s exactly what Herman Pannell told you. He came trotting up the driveway with a gun in his hand. So here is the defendant corroborating everything Herman says.... ” Third, the prosecutor concludes his initial closing argument by using Pannell’s confession as evidence of his guilt stating, “And we know from his confession that what he did is he went to that house, he went and busted out a window, and he took his lighter and he lit the curtains and he burned the house down.” Within the same paragraph, the prosecutor essentially misled the jury by implying that Pannell’s confession corroborated Teresa’s allegation that Pannell threatened to burn the house down the night before the fire. During this argument, the prosecutor argued:
So here is the defendant corroborating everything Herman says and corroborating everything his wife has said. He made the threat that he was going to burn it down. We know doggone well he was mad about the fact that his wife had possession of the house. He was there that day, just like he said and Herman Pannell said. And in his own confession he tells you that he burned the house down.
In fact, Pannell did not corroborate Teresa’s entire testimony. At trial, Pannell admitted to speaking to Teresa the night before the fire, but denied making any such threat. Finally, and most notably, the prosecutor expended his entire final closing argument to refute Pannell’s testimony that he only gave his confession because the officers promised him that, in doing so, he would be released from jail. Implying that Pannell had lied on the stand, the prosecutor argued to the jury that “if you go back there and decide to return a not guilty verdict in this case, you have disregarded the testimony of the law enforcement officers who took the statement ... where they said that [Pannell] freely and voluntarily gave the statement. ...” Viewing the closing argument as a whole, it appears the prosecutor used Pannell’s confession as his trump card when attempting to clear up the gray areas in his case.
¶ 35. It is also important to note that Pannell’s case was brought before two grand juries. As previously stated, the first grand jury met between March 28 and April 1, 2005. After reviewing the evidence before it, the grand jury failed to return a true bill against Pannell, finding insufficient evidence to indict him on the charge of arson. Of great significance is that though the grand jury appeared to meet after Pannell’s involuntary confession was taken by Officer Taylor, it appears likely, based on the record, that the State did not present his confession before the grand jury. It was only after the State failed to secure an indictment the first time, that the State went back before the grand jury, this time with Pannell’s involuntary confession. Having the benefit of Pannell’s involuntary confession, the second grand jury determined that there was enough evidence against Pannell to warrant an indictment.
*290 ¶ 36. Given these facts: that Pannell’s confession was the only confession available, that it appeared essential to the State’s ability to prove Pannell’s guilt, and that it appeared to be the weighing factor in the grand jury’s decision to indict Panned, the circuit court’s admission of the confession was not harmless error.
CONCLUSION
¶ 37. For the foregoing reasons, we find that the circuit court erred by failing to suppress Pannell’s confession, which was elicited as a result of police-initiated interrogation after he asserted his right to counsel. Further, the error was not harmless because without the confession, it appears that the State was unable to secure an indictment against Pannell and was only able to present circumstantial evidence of Panned’s guilt at trial. Therefore, the judgment of the circuit court is reversed and remanded for a new trial.
¶ 38. THE JUDGMENT OF THE PRENTISS COUNTY CIRCUIT COURT IS REVERSED AND REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PRENTISS COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES AND ROBERTS, JJ, CONCUR.
CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY IRVING, J.

. The exact date of the presentation of Pan-nell's case to the first grand jury is not completely certain. However, in the State's motion in limine filed on October 2, 2006, the State admits that the no true bill was issued between March 28 and April 1, 2005; the dates the grand jury was in session following Pannell’s confession.

. Officer Taylor testified during the suppression hearing that he presented evidence before the grand jury on two separate occasions. When asked why he had to present the evidence a second time, Officer Taylor admitted that the grand jury returned a "no true bill” the first time that it met. The State also admitted in both its motion in limine filed on October 2, 2006, as well as its supplemental brief, that the no true bill was issued by the first grand jury.